```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                                    )
UNITED STATES SURETY COMPANY,       )
                                    )
                Plaintiff,          )
                                    )    Civil Action
v.                                  )    No. 21-10200-PBS
                                    )
EMPIRE DESIGN AND CONSTRUCTION LLC, )
EMPIRE EQUIPMENT RENTALS LLC,       )
and                                 )
MICHAEL CORSETTI,                   )
                                    )
                Defendants.         )
_____ )
```

## MEMORANDUM AND ORDER

March 10, 2022

Saris, D.J.

## INTRODUCTION

Plaintiff United States Surety Company ("USSC") sued defendants Empire Design and Construction LLC ("Empire Design"), Empire Equipment Rentals LLC ("Empire Equipment," and collectively with Empire Design, "Empire"), and Empire's president, Michael Corsetti, for breach of contract and indemnity. At issue is defendants' purported failure to indemnify USSC after USSC incurred losses on two surety bonds that it issued on behalf of Empire Design. USSC moves for partial summary judgment. After a hearing, the Court **ALLOWS** the motion in part.

1

**FACTUAL BACKGROUND**

USSC issues surety bonds on behalf of contractors. Empire Design is one such contractor. On March 15, 2017, Empire Design, Empire Equipment, and Corsetti executed an agreement to indemnify USSC if it incurred losses during its surety relationship with Empire (the "Indemnity Agreement"). In the Indemnity Agreement, defendants agreed to indemnify USSC for virtually any type of loss it suffered for any of several enumerated reasons, including, "(i) the execution or procurement by [USSC] of any Bond; [or] (ii) the failure of [Empire and/or Corsetti] to perform or comply with any provision of this Agreement." Dkt 27-1 at 9. The Indemnity Agreement continues,

> [Empire and Corsetti] further agree that they shall be liable for, and that [USSC] shall be entitled to charge and recover for, any and all payments made by [USSC] in the good faith belief that: (1) [Empire and/or Corsetti] is or has been in default under this Agreement; (2) [USSC] was or might be liable for a claim asserted against a Bond, whether or not such liability actually existed; or (3) such payments were or are necessary or expedient to protect any of [USSC's] rights or interest or to avoid or lessen [USSC's] actual or alleged liability. [USSC] shall be entitled to the rights and remedies set forth in this Section III and to all of the benefits of this Agreement with respect to any liability, payment, loss or cost that is incurred or made by [USSC] in good faith. The foregoing obligations shall extend to and include an obligation to pay to [USSC] interest on any payments made by [USSC] as a result of having issued any Bond, at the rate of ten percent (10%) per annum or the maximum rate allowed by

>     law, whichever is lower, calculated from the date such
>     payment is made by [USSC].

Id. In the event of a default, including Empire's default on a contract guaranteed by USSC as surety, the Indemnity Agreement provides that on demand from USSC, Empire and Corsetti must "immediately deposit with [USSC] collateral in any amount, value or form as [USSC] may designate in its sole absolute discretion." Id. at 11.

With the Indemnity Agreement in hand, USSC issued two payment and performance surety bonds on behalf of Empire Design. The first, issued to Monitor Builders, Inc. ("Monitor") as obligee in the amount of $377,414.00, guaranteed Empire Design's performance as a subcontractor for a construction project on Harrington Hospital in Southbridge, Massachusetts. The second, issued to the City of Worcester, Massachusetts as obligee in the amount of $1,116,000.00, similarly guaranteed Empire Design's performance as the general contractor for the renovation of a World War I memorial.

Empire Design defaulted on both contracts. First, on November 16, 2018, the City of Worcester terminated Empire Design on the World War I memorial project and demanded that USSC arrange for the work's completion. USSC selected the lowest responsible bidder in a competitive process, who completed the project without exceeding the remaining contract balances. Thus, USSC's only

expenses on the City of Worcester bond were consulting engineer and attorney fees.

Next, on December 28, 2018, Monitor declared Empire Design in default on the Harrington Hospital project and demanded that USSC fulfill its surety obligations.  USSC and Monitor agreed that Monitor would arrange for the completion of Empire Design's work on the Harrington Hospital project and that USSC would pay to Monitor the costs of completion in excess of Empire Design's subcontract balances.

Between April 12, 2019 and January 21, 2021, USSC repeatedly demanded that Empire and Corsetti post collateral pursuant to the Indemnity Agreement.  Empire and Corsetti did not post collateral.  This lawsuit followed.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine issue exists when, based on the evidence, a reasonable jury could resolve the issue in favor of the non-moving party."  Napier v. F/V DEESIE, Inc., 454 F.3d 61, 66 (1st Cir. 2006).  To obtain summary judgment, the moving party must demonstrate "an absence of evidence to support the nonmoving party's position."  Rogers v. Fair, 902 F.2d 140, 143 (1st Cir.

4

1990).  Upon that showing, the burden shifts to the nonmoving party "to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the [nonmoving party]."  Id.

II.  **Analysis**

USSC moves for summary judgment on its claims for indemnity (Count I), common law indemnity (Count II), and breach of contract (Count III).  The three claims are interrelated and analyzed under the Indemnity Agreement.  See Great Am. Ins. Co. v. RDA Constr. Corp., No. 13-cv-11593, 2015 WL 5163043, at *3 n.1 (D. Mass. Sept. 3, 2015) (citing N. Am. Specialty Ins. Co. v. MPF Corp., No. 09-11122-LTS, 2010 WL 5452721, at *2 (D. Mass. Dec. 29, 2010)).  "To prevail on a claim for breach of the surety contract [the plaintiff] must demonstrate (1) that the parties reached a valid and binding agreement, (2) that defendants breached a material term of the agreement, and (3) that [the plaintiff] suffered damages because of defendants' breach."  Fid. & Guar. Ins. Co. v. Boustris, No. 08-cv-11198, 2010 WL 4183879, at *2 (D. Mass. Oct. 25, 2010) (citing Michelson v. Dig. Fin. Servs., 167 F.3d 715, 720 (1st Cir. 1999)).  Once a surety has demonstrated entitlement to indemnification, it is "entitled to judgment as a matter of law provided that it acted in good faith in incurring the expenses for which it seeks indemnity."  Fid. & Guar. Ins. Co. v. Star Equip. Corp., 541 F.3d 1, 7 (1st Cir. 2008).

Here, the factual record yields only one reasonable conclusion: defendants are liable for breach of the Indemnity Agreement.  Defendants admit that they executed the Indemnity Agreement and do not contest its validity.  See Dkt. 29 ¶ 3.  They have not submitted any evidence rebutting USSC's documentation of their failure to indemnify USSC and to post collateral in breach of the Indemnity Agreement.  As to damages, USSC has shown—and defendants have failed to contest—that USSC incurred losses on both surety bonds following Empire's default.  There is no evidence suggesting that USSC incurred any expenses in bad faith.  See Star Equip. Corp., 541 F.3d at 7 (defining bad faith as "dishonest purpose, conscious doing of wrong, or breach of duty through motive of self-interest or ill will.").  Defendants have not created a triable issue as to their liability under the Indemnity Agreement.

Instead, defendants dispute the amount of damages they owe for their breach.  The Indemnity Agreement provides,

> In the event of any payment by [USSC], an itemized, sworn statement of the amount of any such payment, invoice(s) or other evidence of such payment shall be *prima facie* evidence of the fact and the amount of such payment and, in the absence of actual fraud, shall be final, conclusive and binding upon [Empire and Corsetti] in any claim, suit or other proceeding by [USSC].

Dkt 27-1 at 11.

Such "prima facie evidence" clauses are enforceable and have the effect of shifting the burden to the principal to show an absence of liability once the surety has provided the required

documentation of payment. See Great Am. Ins. Co., 2015 WL 5163043, at *4; see also United States Fid. & Guar. Co. v. Feibus, 15 F. Supp. 2d 579, 582 (M.D. Pa. 1998) (collecting cases).

USSC submitted an affidavit from its Vice President Frank Lanak (the "Lanak Affidavit") listing its losses on the two bonds as follows:

| | |
|---|---:|
| Claim payments to Monitor Builders | $357,643.84 |
| Attorney and Consultant fees and costs | $163,616.34 |
| Subrogation Costs | $  8,897.55 |
| Total | $530,157.73 |

Dkt 27-1 ¶ 13.

USSC further attached invoices and itemized statements of loss to its reply brief. These documents show payments of $354,143.84 to Monitor, see Dkt 34-1 at 7; $161,600.34 in attorney and consultant fees and costs, see id. at 18–19; and no apparent subrogation costs, with total payments on both bonds of $515,744.18. Given the discrepancy between the amount claimed in the Lanak Affidavit and the amounts substantiated in the invoices and statements of loss, the Court finds that USSC has made a *prima facie* showing that it is entitled to damages of $515,744.18 plus the interest required under the Indemnity Agreement. USSC is not entitled to summary judgment on the additional $14,413.55 it claims in the Lanak Affidavit.

## ORDER

USSC's motion for summary judgment as to Counts I, II, and III of the Complaint (Dkt No. 26) is **ALLOWED** in part. Defendants shall jointly and severally indemnify USSC in the amount of $515,744.18 plus 10 percent interest per annum from the date of USSC's initial payment on the surety bonds. USSC shall inform the Court within 30 days of entry of this Order if it is pursuing its fraudulent transfer claim against Michael Corsetti. If not, USSC shall file a form of judgment setting forth the date that interest begins to run.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge